CAROLYN BROWN AND GREGORY BROWN, HUSBAND AND WIFE
v.
CROSS GATE SERVICES, INC. AND THE PMA INSURANCE GROUP A/K/A PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY
No. 2009 CA 0696.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
TOM WITHERS, III, Counsel for Plaintiffs-Appellants Carolyn Brown and Gregory Brown
RICHARD P. SULZER, ROBERT E. WILLIAMS, IV, CHRISTY C. HENDRIX, CHRISTINA L. FALCO, Counsel for Defendants-Appellees Cross Gate Services, Inc. and Pennsylvania Manufacturers Association Insurance Company
MUSA RAHMAN, Counsel for Intervenor-Appellant Louisiana Workers' Compensation Corp.
Before: PARRO, KUHN, and McDONALD, JJ.
KUHN, J.
Plaintiffs-appellants, Carolyn and Gregory Brown, appeal the trial court's judgment, granting summary judgment in favor of defendants-appellees, Cross Gate Services, Inc. (Cross Gate) and its insurer, Pennsylvania Manufacturers Association Insurance Company, and dismissing their claims for damages resulting from a slip Carolyn sustained while working in a building that Cross Gate was obligated to maintain in accordance with a janitorial services agreement it entered into with her employer.[1] We affirm.
On appeal, appellants contend because they presented evidence that Cross Gate's employees failed to perform their duties in accordance with the janitorial service's recommended procedure, a genuine issue of material fact existed which precluded the grant of summary judgment. The gist of their complaint is that the trial court erred in requiring them to present evidence establishing that the cleaning procedures Cross Gate employees undertook in waxing the second-story floor on which Carolyn slipped as she exited her office created the hazard which caused her injuries. Appellants claim they are entitled to an inference from the evidence they presented that the procedures undertaken by Cross Gate employees created a wax buildup which caused Carolyn to slip.
Cross Gate offered deposition excerpts of its janitorial manager, Carol Jackson. Jackson testified that in applying wax to the floor, the floor technician was required to strip the area and allow it to dry. Three coats of wax were subsequently applied; each after the previous applications had fully dried. She explained that Cross Gate recommended that in applying the wax in a figure 8 motion, the floor technician use a cotton mop if it was available. But more often than not, cotton mops were not available and the floor technician would utilize the same type of cloth mop that was used for other cleaning projects. Jackson did not know why Cross Gate's corporate office recommended the use of the cotton mop and she never noticed any difference in the floor after different mops had been used.
Jackson stated that in waxing, difficult areas were in corners as well as along the edges of the walls and the doors. She described in detail the manner in which wax was applied in difficult areas, indicating that as thin a coat as possible was applied, and only the first coat was applied to the edges; the second and third coats were applied to at least an inch away from the corner, wall, or doorway. Jackson disagreed that the procedure they utilized created wax buildup at the walls and doors, suggesting that it was dirt rather than wax that would tend to build up. Any buildup that occurred was specifically noted in her pre-waxing inspection and she would point the area out to the floor technician before he commenced the waxing job. Jackson did not believe any buildup would cause a person to fall; she said it creates a discoloration that she has removed in an effort to protect the tiles.
The deposition testimony of Tonja Thierry was also admitted. Thierry was Carolyn's co-employee who accompanied her when she slipped. The two worked in the same office and were exiting through the doorway when Carolyn slipped. Thierry recalled that Carolyn had stepped about two feet out of the doorway when she slipped. She stated that Carolyn never fell to the ground but her foot twisted as she tried not to hit the floor. Thierry was not sure whether Carolyn grabbed her arm or the wall, but she was certain Carolyn did not fall to the floor.[2] Thierry testified that she attempted to figure out what had caused Carolyn to slip. She did not see any substance like water or anything on the floor. Indeed, there was nothing in the area visible to her eye. She rubbed her foot on the floor and found a spot that was slipperier than the rest of the area. Thierry and Carolyn proceeded to their destination. When they returned, Carolyn slipped in the same spot again without falling to the ground.
Thierry estimated the spot was about six inches in diameter. She did not notice any discoloration in the slipperier area. Thierry said that she entered and exited the office an average of ten times a day, which would require her to walk in the same area as the slippery spot and that she had never slipped. Thierry was unaware of any of the sixteen to seventeen other employees having slipped in that spot during the thirteen days between the date the floor had last been waxed and the date Carolyn slipped.
Excerpts of Carolyn's deposition testimony were also introduced in support of Cross Gate's motion for summary judgment. Carolyn admitted that she did not examine the area. She stated that there was no difference in color between the spot where she slipped and the rest of the floor. Carolyn testified that she knew there was something on the floor because Thierry had taken her foot and rubbed across the area, stating "it was a waxy substance."
The record is devoid of any evidence establishing the reason that Cross Gate recommended use of a cotton mop for application of wax. And nothing was offered to support a finding that use of the cloth mop could create a buildup of wax thirteen days after its application in the area where Carolyn slipped. Without such evidence, plaintiffs have failed to establish factual support for one or more elements essential to their claim. See La. C.C.P. art. 966C(2); Leonard v. Ryan's Family Steak Houses, Inc., XXXX-XXXX, p. 3 (La. App. 1st Cir. 6/21/06), 939 So.2d 401, 404-05.
Accordingly, the trial court's judgment, granting summary judgment and dismissing plaintiffs' claims against Cross Gate and its insurer, is affirmed in this memorandum opinion issued in compliance with La. URCA Rule 2-16.1.B. Appeal costs are assessed against plaintiffs-appellants, Carolyn and Gregory Brown.
AFFIRMED.
NOTES
[1] On the date of her injuries, Carolyn was employed by Louisiana Health Services and Indemnity, a/k/a Blue Cross Blue Shield of Louisiana (Blue Cross). The Louisiana Workers' Compensation Corporation intervened in the lawsuit to recover from any damages award the amount of workers' compensation benefits it had paid Carolyn for the injuries she sustained in the course and scope of her employment.
[2] Plaintiffs also filed a motion for partial summary judgment on the issue of Cross Gate's liability, which was heard at the same time and denied by the trial court. In support of their motion, Cross Gate introduced more excerpts from Thierry's deposition, taken on November 6, 2007, as well as a transcript from an interview she had given on February 21, 2006. In her recorded statement, Thierry recalled Carolyn had "kind of hit the wall" as she prevented herself from falling to the floor and that she did not grab onto Thierry. But at her deposition, she testified that Carolyn "wasn't close enough to the wall to grab [it]" and that she thought maybe Carolyn had grabbed her arm.